*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARY CAROL MOLLOY,

        Plaintiff-Appellant,

v

CHARTER TOWNSHIP OF DEWITT,

        Defendant-Appellee.

UNPUBLISHED
February 14, 2025
2:03 PM

No. 369077
Clinton Circuit Court
LC No. 2023-012318-CZ

Before: N. P. HOOD, P.J., and REDFORD and MALDONADO, JJ.

PER CURIAM.

In this action arising under the Freedom of Information Act (FOIA), MCL 15.23 *et seq.*, plaintiff appeals by right the trial court's order granting summary disposition in favor of defendant pursuant to MCR 2.116(C)(10) (no genuine issue of material fact).[1] We affirm.

## I. BACKGROUND

On November 4, 2022, plaintiff underwent an eye examination that involved dilation of her pupils. Her choice to drive later that day led to multiple emergency calls reporting a vehicle being driven erratically. The first caller, a retired Michigan State Police (MSP) trooper, was still driving when he called, with his wife as a passenger. He reported that plaintiff had driven into

---

[1] Defendant also sought summary disposition pursuant to MCR2.116(C)(7) (governmental immunity) and (C)(8) (failure to state a claim), and the court did not specifically state which subrule(s) supported its decision. However, we can discern from the record that Subrule (C)(10) was the appropriate ground because the court made no mention of immunity and because the court considered evidence outside of the pleadings. See *Krass v Tri-Co Security, Inc*, 233 Mich App 661, 664-665; 593 NW2d 578 (1999) (stating that when the trial court does not specify "which section of MCR 2.116 the trial court based its ruling, and both the defendant and the trial court relied on documentary evidence beyond the pleadings in support of the defendant's motion for summary disposition, this Court must construe the defendant's motion as being granted pursuant to MCR 2.116(C)(10)").

oncoming traffic, forced other vehicles off the road, and stopped in the roadway for no reason. He expressed fear that plaintiff was going to kill someone, and the man's wife could be heard agreeing. The second caller reported that plaintiff "was all over the road, stopping on the road, and crossing the centerline." The responding officer found plaintiff's car and pulled her over. Plaintiff, who was wearing sunglasses, explained that her pupils had been dilated, admitted to driving slowly, admitted to having difficulty driving over bridges, but denied crossing the centerline. Plaintiff passed the cognitive tests administered by the officer, and the officer requested an ambulance to check on plaintiff's condition. Plaintiff was cleared, but the officer did not allow her to drive, and he forwarded his report to the Secretary of State.

Plaintiff later filed a FOIA request for a copy of the police report, stating that an attorney had advised her to obtain the report "for an upcoming reexamination by the Secretary of State." Plaintiff also stated that she "may" need the name of the retired MSP trooper because he might have "lied and exaggerated what happened and apparently encouraged two other witnesses to also give false accounts of what happened." She concluded that "[i]f unfair action is taken against my license by the Secretary of State, I will need the name of the retired MSP trooper to file a civil lawsuit against him."[2] Defendant responded two weeks later, granting plaintiff's request in part but explaining that the names and telephone numbers of the witnesses were exempt from disclosure pursuant to MCL 15.243(1)(a) (privacy) and (b)(*iii*) (law-enforcement investigative records). Defendant also produced a copy of the officer's report but with the names and telephone numbers of witnesses redacted. Plaintiff then brought suit against defendant in the circuit court, alleging that the names of the people who reported her erratic driving were not exempt from disclosure and that, accordingly, defendant lacked good cause to withhold the information. The court ultimately agreed with defendant and granted summary disposition in its favor.

## II. DISCUSSION

Plaintiff argues that the trial court erred by granting summary disposition in favor of defendant because the identities of the callers were not exempt from disclosure. We disagree.

This Court reviews de novo a trial court's decision to grant or deny a motion for summary disposition, and the evidence is viewed in a light most favorable to the nonmoving party. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). Summary disposition should be granted pursuant to MCR 2.116(C)(10) when the evidence reveals no genuine issue of material fact. *Id*. at 183. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*. The interpretation and application of FOIA is a question of law which this Court reviews de novo. *ESPN, Inc v Mich State Univ*, 331 Mich App 662, 664; 876 NW2d 593 (2015). The trial court's assessment of FOIA's balancing tests is reviewed for abuse of discretion. *Id*. A

---

[2] The Secretary of State's office subsequently conducted an investigation or reexamination of plaintiff, as authorized pursuant to MCL 257.320(1)(a) for when there is "reason to believe that the person is incompetent to drive a motor vehicle or is afflicted with a mental or physical infirmity or disability rendering it unsafe for that person to drive a motor vehicle." The Secretary of State made no finding that plaintiff was unfit to drive, and she "continues to maintain her Michigan driver's license in good standing."

court abuses its discretion when its decision falls outside the range of principled outcomes.  *Id*.  Underlying factual findings are reviewed for clear error.  *Id*.

This case concerns application of Michigan's Freedom of Information Act, section 1 of which provides in relevant part:

> It is the public policy of this state that all persons, except those persons incarcerated in state or local correctional facilities, are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and public employees, consistent with this act.  The people shall be informed so that they may fully participate in the democratic process.  [MCL 15.231(2).]

"FOIA, through its disclosure provisions, allows the citizens of Michigan to hold public officials accountable for the decisions that those officials make on their behalf."  *State News v Mich State Univ*, 274 Mich App 558, 568; 735 NW2d 649 (2007) (*State News I*), rev'd in part on other grounds 481 Mich 692 (2008).  Accordingly, pursuant to MCL 15.233(1), "upon providing a public body's FOIA coordinator with a written request that describes a public record sufficiently to enable the public body to find the public record, a person has a right to inspect, copy, or receive copies of the requested public record of the public body."

Public records do not need to be disclosed if they are exempt pursuant to Section 13 of FOIA.  See MCL 15.243.  Defendant asserted the "privacy exemption" found in MCL 15.243(1)(a), which exempts from disclosure "[i]nformation of a personal nature if public disclosure of the information would constitute a clearly unwarranted invasion of an individual's privacy."  An agency asserting this exemption must establish two prongs: "First, the information must be 'of a personal nature.'  Second, it must be the case that the public disclosure of that information 'would constitute a clearly unwarranted invasion of an individual's privacy.' "  *ESPN*, 311 Mich App at 665 (quotation marks and citation omitted).

Regarding the first prong, "a person's name—standing alone—is not information of a personal nature . . . ."  *ESPN*, 311 Mich App at 665.[3]  However, "people linked with a crime, whether as a perpetrator, witness, or victim, have an interest in not sharing this information with the public.  Further, releasing the identity and other personal information of the parties could make them potential targets for retaliation."  *State News I*, 274 Mich App at 578.  While "a person's name does not by itself provide information of a personal nature," this is only true "to the extent that the name is not associated with any personal information about the person named."  *ESPN*, 311 Mich App at 666."

> In order for a name to be useful, the name must normally be associated with some other information.  In the context of a police report, a person's name is useful

---

[3] In *Rataj v City of Romulus*, 306 Mich App 735, 753-754; 858 NW2d 116 (2014), this Court held that the names of a citizen and a police officer who were involved in an assault were not covered by the privacy exemption because names "are not information of a personal nature . . . ."  However, in *ESPN*, this Court cautioned that *Rataj* does not "stand for the proposition that a name can never constitute information of a personal nature . . . ."  *ESPN*, 311 Mich App at 665.

because the report will contain information about the person's actual or purported involvement in the incident. That is, the report will associate the name with specific facts or allegations that may or may not be information of a personal nature. And, in analyzing the first prong of the test for the privacy exemption . . . the relevant inquiry is whether the information associated with the name is information of a personal nature. [*Id*.]

Put differently, the question before us "is not whether the names of the [people] in the report[] amount[s] to information of a personal nature, but whether the revelation of the names when coupled with the information in the report[] constitutes information of a personal nature . . . ." *Id*. at 667. If so, our question becomes "whether the method for protecting the private information was minimally sufficient to avoid an unwarranted invasion of privacy." *Id*.

In this case, plaintiff is not only seeking names; rather, she is seeking names that are associated with allegations made against her. While defendant ultimately was not charged, these people most likely believed that they were reporting criminal activity. Lack of charges notwithstanding, the erratic driving these witnesses described likely constituted reckless driving,[4] and the witnesses likely suspected that plaintiff was under the influence of either alcohol or other substances. The witnesses might not want the fact that they reported suspected criminal activity to be divulged. Therefore, the witnesses' names were of a personal nature in satisfaction of the first prong.

"[T]he second prong of the privacy exemption requires the court to balance the public interest in disclosure against the interest the exemption is intended to protect." *State News I*, 274 Mich app at 579. "[T]he only relevant public interest in disclosure to be weighed in this balance is the extent to which disclosure would serve the core purpose of the FOIA, which is contributing significantly to public understanding *of the operations or activities of the government*." *Mager v Dep't of State Police*, 460 Mich 134, 145; 595 NW2d 142 (1999) (quotation marks and citation omitted). Requests for information about private citizens "that reveal little to nothing about the inner working of government will fail this balancing test." *ESPN*, 311 Mich App at 669.

In the present case, the names of the witnesses who reported plaintiffs' erratic driving would reveal nothing about the operations or activities of the government. Plaintiff was given all of the information available to defendant about the witnesses' statements, and this is all that plaintiff needs to understand the officer's response. Plaintiff suggests that the police report was inadequate because the witnesses might have said more than the officer recorded. This argument implies that plaintiff would use the names to eventually contact the witnesses, which belies plaintiff's argument that the names are not private information. Further, plaintiff stated in her request that she wanted one of the names because she was considering bringing a lawsuit against a witness whom she asserts lied or exaggerated about the nature of her driving.[5] Thus, the

---

[4] See MCL 257.626.

[5] Notably, plaintiff could have filed a "*Molloy v John Doe*" lawsuit and then obtained a subpoena for this information if her plan was to seek civil redress.

information is actually serving plaintiff's interest in seeking civil redress rather than her interest in transparency regarding government activities.[6] Therefore, the balancing test weighs heavily against disclosure of these names.

Because our conclusion that this exemption precludes disclosure of the information that plaintiff seeks, it is unnecessary to address plaintiff's remaining arguments.

Affirmed. Defendant, being the prevailing party, may tax costs. MCR 7.219(A).


/s/ Noah P. Hood
/s/ James Robert Redford
/s/ Allie Greenleaf Maldonado

---

[6] The facts before us do not require resolution of whether a civil lawsuit constitutes retaliation for the purposes of FOIA.